UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MONTICELLO AUSTIN,

        Plaintiff,

v.                                                 Case No. 8:06-cv-273-T-24MAP

PROGRESSIVE RSC, INC.,

        Defendant.

_____/

**O R D E R**

      This cause comes before the Court on Defendant's motion for summary judgment (Doc. No. 24). Plaintiff filed a response in opposition thereto (Doc. No. 35).[1] With leave of the Court, Defendant filed a reply brief in support of its motion for summary judgment (Doc. No. 34).

**I.**      **Background**

      **A.**      **Plaintiff's Initial Employment and Work Unit Structure**

      Defendant is a property and casualty insurance company, which employs over 27,000 employees nationwide (Reed Aff., ¶2). Plaintiff Monticello Austin ("Plaintiff"), an African American man, was hired on September 7, 1997 as a Client Server Operations Analyst II ("CSOA II") in Defendant's Riverview, Florida facility. Plaintiff was hired by Al Vitello ("Vitello"), Defendant's then IT Manager (Reed Aff., ¶2). Plaintiff alleges that Vitello promised him that he would be promoted from a CSOA II to a Client Server Operations Analyst III

_____

[1] The Court notes that pursuant to an agreement between counsel for the parties, Plaintiff filed an amended response which merely changed one word from its original response to Defendant's motion for summary judgment (Doc. No. 28).

("CSOA III") within six months of his hire (Austin Depo., p.36).  Vitello did not put this promise in writing (Austin Depo., pp.38-39).  Plaintiff has never been promoted and is currently employed by Defendant as a CSOA II (Reed Aff., ¶3).

Since 1998, Plaintiff has successively reported at various times to IT Managers Eric Gruhn, Eric Wilson, Brian Clapper, and Javier Vinces.  All of these IT Managers have reported to Perry Hubert, who is employed in Defendant's Austin, Texas facility (Reed Aff., ¶ 2). Plaintiff's position is and has been part of the Call Center Desktop Support Group of the Enterprise Technology Subgroup of the IT Business Group (hereinafter "ETG")(Reed Aff., ¶ 3). Plaintiff's work unit, consisting of approximately 11 employees, provides technical computer support for employees at Defendant's Sales and Service Call Center in Riverview, Florida (Reed Aff., ¶ 2 and Vinces Aff., ¶3).  Plaintiff's work unit is currently divided into three separate areas: Problem Management (trouble ticket resolution), where Plaintiff works under Team Lead Dave Peck; Asset Management (computer configuration and asset control) where Bill Honecker is Team Lead; and Infrastructure (server and telecom equipment maintenance)(Vinces Aff., ¶ 3).

In addition to Plaintiff's work unit in Riverview, Florida, Defendant has call center support in Phoenix, Arizona; Sacramento, California; Colorado Springs, Colorado; Cleveland, Ohio; and Austin, Texas (Reed. Aff., ¶4).  Each call center has its own IT Manager (Reed Aff., ¶4).

### B.    Defendant's Promotion Process and Plaintiff's Work Unit Promotions

It is not disputed that in order to be promoted from a CSOA II to a CSOA III, employees must first demonstrate to the satisfaction of their IT Manager that they are already consistently performing CSOA III level work in their day-to-day activities (Reed Aff., ¶5 and Vinces Aff.,

¶5).  While the promotion process itself is not set out in a written procedure (Reed Depo., pp. 10-11), the various levels of performance associated with a particular job level are set forth in a Job Skills Matrix which Defendant has utilized since the early 1990's to assist Defendant's employees with their career development (Reed Aff., ¶¶5-6 and Vinces Aff. ¶5).

Some of the CSOA III skills that an IT Manager looks for in an employee include: the ability to create work instructions and procedures for lower level technicians; the ability to accept feedback and coaching from senior managers; the ability to handle multiple projects at one time; and a demonstrated ability "to enthusiastically complete the job at the highest standard, beyond just the acceptable limits" (Vinces Aff., ¶5 and Hubert Depo., pp. 21-22).  CSOA III's must also demonstrate strong troubleshooting skills and establish themselves as an expert in the group for a particular business process.  Lastly, a CSOA III candidate must demonstrate effective communication and leadership skills (Vinces Aff., ¶5 and Hubert Depo., pp. 21-22).

Defendant contends that in addition to the employee meeting these skill requirements, the company must have a business need in the work unit for the position before the employee can be promoted.  Specifically, Defendant states that "a determination has to be made that the technical support requirements of the facility and the needs of the team in place at the facility justify the hire or promotion of an individual to the next level."  (Reed Aff., ¶7 and Exh. 4 and Vinces Aff., ¶¶5-6).  There are numerous factors that Defendant considers in determining business need, including but not limited to, the technical support problems handled by the technician employee at the facility as well as the technical expertise of other employees in the employee's work unit. The Defendant also analyzes whether the employee has invested the time to evaluate, analyze, and improve upon team processes such that the employee has created a need for the next level

within the work unit (Reed Aff., ¶7 and Exh. 4, Vinces Aff., ¶8 and Hubert Depo., p. 21).

While promotion to a CSOA III has always required both the determination by the Defendant that the employee is performing CSOA III level work and that there is a business need in the particular facility, since 2004 the ETG Group has also required the employee to complete a Job Skills Matrix Evaluation (Reed Aff., ¶8 and Vinces Aff., ¶9).   A Job Skills Matrix Evaluation maps out in detail how the employee performs work in his or her current role with Defendant and must be approved as accurate by the IT Manager.  Once the employee and IT Manager agree that an employee is performing at a certain level[2], and once management determines that the facility has a business need for an employee at that level, then the IT Manager may recommend the employee for promotion.  In Plaintiff's case, any such recommendation would be to Perry Hubert ("Hubert")(Reed Aff., ¶8).

From 1998 through the present, there have been no CSOA III's employed at Defendant's Riverview, Florida facility (Vinces Aff., ¶4).  Plaintiff states that Defendant's Riverview, Florida facility is the only facility that does not employ a CSOA III (Austin Aff., ¶2).  The only promotions in Plaintiff's work unit at Riverview have involved five promotions from the entry level CSOA I position to a CSOA II position[3] and the promotion of Plaintiff's current IT Manager, Javier Vinces, from a CSOA IV to IT Manager (Reed Aff., ¶11 and Vinces Aff., ¶4).  Plaintiff alleges that he is the only member of his work unit who has not been promoted a level (Austin Depo., pp. 117-118 and 182-183).  However, two other employees, Bill Honecker (CSOA IV) and Derick Sookhoo (CSOA V), currently employed in Plaintiff's work unit have

---

[2]In the instant case, CSOA III level work.

[3]The position Plaintiff holds.

never been promoted (Reed Aff, Exh. 1 and Honecker Depo., pp. 4-5).  Additionally, David Peck (CSOA IV) has not been promoted while employed by Defendant in Riverview, Florida.  He did, however, receive a promotion while he worked for Defendant in Cleveland, Ohio (Peck Depo, pp. 5-8 and 22).

## C.  Plaintiff's Qualifications and Performance[4]

While Plaintiff does not agree with how Defendant sets its performance standards, he admits that the standards are applied equally to all the employees in his work unit (Austin Depo., pp. 62-66).  To date, none of Plaintiff's IT Managers have recommended that Plaintiff be promoted from a CSOA II to a CSOA III.  While Plaintiff has generally met Defendant's performance expectations as to the CSOA II position, managerial consensus is that he has not performed at a CSOA III level.  By way of example, Plaintiff currently reports to IT Manager Javier Vinces ("Vinces"), through Problem Management Team Lead Dave Peck ("Peck").  Vinces has been the IT Manager at the Riverview, Florida facility since August 2004 and Plaintiff began taking direction from Peck in June 2005 (Vinces Aff., ¶2 and Peck Depo., pp. 14-16 and 21).  Peck and Vinces state that Plaintiff has only performed CSOA II level work while he has reported to them (Vinces Aff., ¶¶10 and 15 and Peck Depo., pp. 14-16 and 21).

Defendant submitted evidence that Plaintiff has not consistently met his core objectives and his performance on the Problem Management team has been at or near the bottom in relation to the performance of his peers in the group (Vinces Aff., ¶¶10-14 and Exh. 6-7).  During his deposition Plaintiff stated that he believed he was performing at a CSOA III level but was unable

---

[4]The Court is listing Plaintiff's qualifications and job performance in reverse chronological order since Plaintiff's claim of racial discrimination is predominantly based upon Defendant's failure to promote him to a CSOA III in January of 2005 (Austin Depo., Exh. 19).

to identify examples of CSOA III level work he is currently performing.  Plaintiff testified in part

as follows:

> Q:      If you look at job examples or the areas the matrix is looking at, it is your
> position that when it comes to analysis and problem solving in your job, you're
> performing currently level III?
>
> A:      I don't have any analysis kind of thing other than my troubleshooting
> that goes along with the tickets.  So I would surmise that yes, I am, I guess.
>
> Q:      You believe that you are a three?
>
> A:      Yeah.
>
> Q:      Can you give me any examples of troubleshooting skills that you would see
> at a level III?
>
> A:      No, I cannot.
>
> Q:      Can't give me a one?
>
> A:      No, I cannot.
>
> Q:      How about under 'technical knowledge,' do you believe that your technical
> knowledge is at a level II or III?
>
> A:      I believe it's at a three.
>
> Q:      Why is that?
>
> A:      I believe it is at a four.
>
> Q:      Why is that?
>
> A:      Because I believe it.
>
> Q:      Can you give me any examples?
>
> A:      No, I cannot.

(Austin Depo., pp. 165-166).

Between May 2002 and August 2004, prior to reporting to Vinces, Plaintiff reported to IT

6

Manager Brian Clapper ("Clapper")(Clapper Aff., ¶2).  Clapper states that in June 2003, he believed that the majority of Plaintiff's regular job responsibilities mapped to either a CSOA I or CSOA II level on the Jobs Skill Matrix (Clapper Aff., ¶¶8-10).  Clapper's formal written evaluations of Plaintiff's performance support the assessment that Plaintiff was not performing CSOA III level work in that Plaintiff was only rated as "Meets Expectations" with respect to his CSOA II level work (Clapper Aff., Exh. 6-7).  In Plaintiff's 2002 Evaluation, Clapper specifically noted "You performed job skills appropriate for your [CSOA II] job level and supported a variety of PC operating systems, applications and equipment" (Clapper Aff., Exh. 6). In Plaintiff's 2003 Evaluation, Clapper noted that Plaintiff "disengaged" himself from activities outside of his immediate job responsibility, and therefore, Clapper advised Plaintiff to "look for opportunities to assist with special projects, initiatives or tasks" (Clapper Aff., Exh. 7). While Plaintiff believes he was performing at a CSOA III level while reporting to Clapper, he could not come forward with any specific examples of CSOA III work at that time (Austin Depo., pp. 105-106).

        Vinces' and Clapper's assessments of Plaintiff's performance are similar to prior assessments by Plaintiff's IT Managers.  Over the years, Plaintiff's immediate supervisors documented issues with Plaintiff's customer service skills, his lack of initiative and leadership, a pattern of unavailability or unwillingness to help with team projects, a resistence to management feedback, and poor work quality (Reed Aff., ¶¶12-16 and Exhs. 6-10).  None of Plaintiff's evaluations between September 1997 and May 2002 would place Plaintiff at a CSOA III level under the CSOA Job Family Matrix (Reed Aff., ¶17 and Exh. 3).

        In addition, it is Defendant's position that there has been no business need for a CSOA

III level position at the Riverview, Florida facility (Reed Aff., ¶11, Vinces Aff., ¶¶ 4 and 8,

Clapper Aff., ¶ 8 and Exh. 3).  Plaintiff admits that as long as he has been employed by

Defendant, he has been advised that there has been no business need for a CSOA III level

position in Riverview, Florida (Austin Depo., pp. 149-150).  However, Plaintiff argues that

Defendant uses the term business need in a subjective manner because whether or not there is a

"need" is based in part on the employee's performance (Doc. No. 34, p. 7).  When asked whether

he had any reason to believe that a business need for the CSOA III level position really did exist

in Riverview, Florida, Plaintiff responded that he was not in a position to make that

determination (Austin Depo., p. 150).

### D.      Plaintiff's Ongoing Complaints About Failure to Promote[5]

In his complaint, Plaintiff alleges that "[c]ommencing in 1999 and continuing until

January 2005," he requested on numerous occasions to be placed in the position of CSOA III and

be paid accordingly (Doc. No. 2, ¶5).  Based on this Court's determination that Plaintiff's claims

are subject to a four year statute of limitations, the time frame considered by this Court is

January 2002 to the filing of Plaintiff's complaint in January 2006.

In July 2002, Plaintiff started working on the configuration and asset management of

---

[5]Plaintiff also complains in part about: (1) Defendant's failure to laterally move him to a new building Defendant was staffing in Sabal Park; (2) Vinces' directive that Plaintiff's performance be monitored by other employees after Plaintiff began performing duties in the configuration room; (3) Plaintiff's request to be permitted to work four ten-hour shifts per week; and (4) Defendant's reclassification of Plaintiff's exempt CSOA position to that of a non-exempt PC Technician position as a result of an internal Fair Labor Standards Act ("FLSA") audit.  With respect to the reclassification, after being notified of the reclassification, Plaintiff filed his first Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC")(Reed Aff., ¶24). However, in his response to Defendant's motion for summary judgment, Defendant admits that these incidents of allegedly "discriminatory bias toward Plaintiff" are really to support his contention that Defendant's proffered reason for it failure to promote him are pretextual.

8

computers used in the Riverview, Florida call center instead of having day-to-day customer contact and conducting computer trouble ticket resolution (Clapper Aff., ¶6).  These duties were similar to duties performed by other CSOA's in the PC Configuration Center in Defendant's home office in Cleveland, Ohio (Clapper Aff., ¶6).

Thereafter, in June 2003, Plaintiff asked IT Manager Brian Clapper and then Team Lead Javier Vinces to reevaluate his role in the ETG, suggesting that he did more work than others in the work unit, thereby justifying a promotion to a CSOA III (Austin Depo., pp. 130-131 and Exh. 12).  In a conference call between Plaintiff, Brian Clapper, and Marion Gannon-Wright, an HR consultant, Brain Clapper advised Plaintiff that he was only performing CSOA I and CSOA II level work in his configuration role (Clapper Aff. ¶8).  Clapper also advised Plaintiff that while his role in the work unit was now somewhat different from other CSOA technicians, he was not doing more work than other CSOA's in Riverview, Florida (Clapper Aff., ¶8).  Clapper advised Plaintiff that if Plaintiff disagreed with his assessment of Plaintiff's performance level, Plaintiff could fill out a Job Skills Matrix Evaluation and provide specific and clear examples of CSOA III level work he was performing at the time.  Subsequently, Brian Clapper advised Plaintiff that if he wanted to be promoted, he should consider opportunities in Defendant's Cleveland, Ohio home office as the opportunities for promotion were much greater than at the Riverview, Florida facility (Clapper Aff., ¶¶8-9 and Exh. 5).

Plaintiff testified that he had no desire to move to Cleveland, Ohio (Austin Depo., pp. 136-137).  Furthermore, Plaintiff balked at completing a Job Skills Matrix Evaluation, arguing that no one else in the work group had to complete one in connection with a request for promotion (Clapper Aff., ¶9).  The completion of a Job Matrix Evaluation was not mandatory for

promotion consideration in 2003, but it was used to assist employees and managers in coming to agreement about an employee's level of job performance (Reed Aff., ¶6).

Subsequently, on January 16, 2004, Plaintiff sent an e-mail to Marian Gannon-Wright, asserting that he had never been promoted because of his race (Reed Aff., ¶18 and Exh. 11).  On January 19, 2004, Human Resources Consultants Marion Gannon-Wright and Darren Reed held a telephone conference with Plaintiff in which they told him that there had been no promotions in the Riverview facility to a CSOA III position and that he had not yet completed a Jobs Skill Matrix (which by this time was mandatory for a promotion) establishing that he was performing CSOA III level work (Reed Aff. ¶18 and Exh. 12).  Subsequent to this telephone conference, Darren Reed reviewed Plaintiff's performance evaluations, analyzed work group promotions and spoke with Plaintiff's managers in an effort to confirm that no discriminatory promotion practices had occurred (Reed Depo., pp. 19-20).  On January 20, 2004, Plaintiff filed an internal complaint with Defendant's Alertline hotline alleging that Brian Clapper and Javier Vinces failed to promote him to a CSOA III because of his race (Reed Aff., ¶20 and Exh. 14). Defendant states that it investigated Plaintiff's complaint and found no evidence that Plaintiff had been denied a promotion because of discrimination (Reed Aff., ¶20).  Over the next two years, both Plaintiff and his girlfriend Lois St. Clair[6] placed approximately 30 additional calls to Defendant's Alertline alleging that Defendant either discriminated against Plaintiff or otherwise treated Plaintiff unfairly.  Defendant states that it researched and addressed each of these complaints and found them to be without merit.  Defendant concedes that Plaintiff disagrees with Defendant's findings (Reed Aff., ¶20).

---

[6]Plaintiff married Ms. St. Clair on September 2, 2006 (Austin Depo., p. 6).

On May 4, 2005, Plaintiff filed a second Charge of Discrimination with the EEOC alleging that he was denied a promotion to a CSOA III on January 3, 2005 because of his race (Reed Aff., ¶25 and Austin Depo., Exh. 19).  On September 25, 2005, the EEOC issued a "No Cause" determination on this charge (Reed Aff., ¶25 and Exh. 17).

On or about January 26, 2006, Plaintiff filed a complaint in the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County (Doc. No. 2).  In the complaint, Plaintiff asserts that Defendant unlawfully discriminated against him in violation of 42 U.S.C. § 1981 and the Florida Civil Rights Act of 1992, Fla. Stat. §760.01 *et. seq.* ("FCRA") based upon his race, African American, when it failed to promote him to a CSOA III.  On February 21, 2006, Defendant filed a timely Notice of Removal, pursuant to 28 U.S.C. § 1441, alleging federal question jurisdiction based upon Plaintiff's § 1981 claim.  On November 17, 2006, this Court entered an Order in which it denied Plaintiff's motion to amend his complaint to add a claim for retaliation finding that there had been undue delay on the part of Plaintiff in bringing the motion to amended and on the grounds of futility (Doc. No. 21).

## II.    Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-

moving party's case.  Id. at 325.  Rule 56 permits the moving party to discharge its burden with

or without supporting affidavits and to move for summary judgment on the case as a whole or on

any claim.  See id.  When a moving party has discharged its burden, the non-moving party must

then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to

interrogatories, and admissions on file," designate specific facts showing there is a genuine issue

for trial.  Id. at 324.

  In determining whether the moving party has met its burden of establishing that there is

no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the

Court must draw inferences from the evidence in the light most favorable to the non-movant and

resolve all reasonable doubts in that party's favor.  See Samples on behalf of Samples v. City of

Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  The Eleventh Circuit has explained the

reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the
> universe of possible inferences from the facts established by weighing each
> against the abstract standard of reasonableness."  [citation omitted].  The
> opposing party's inferences need not be more probable than those inferences
> in favor of the movant to create a factual dispute, so long as they reasonably
> may be drawn from the facts.  When more than one inference reasonably can
> be drawn, it is for the trier of fact to determine the proper one.

WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988).

  Thus, if a reasonable fact finder evaluating the evidence could draw more than one

inference from the facts, and if that inference introduces a genuine issue of material fact, then the

court should not grant the summary judgment motion.  See Augusta Iron & Steel Works v.

Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988).  A dispute about a material fact

is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-

moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id</u>. at 251-52.

### III.    Discussion

42 U.S.C. §1981 provides: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. §1981(a).  In this case, Plaintiff alleges discrimination based upon his race.  Specifically, although not exactly clear from the pleadings as to all the employment decisions Plaintiff considers discriminatory, it seems to be Plaintiff's contention that Defendant's failure to promote him to a CSOA III is the result of Defendant's racially discriminatory promotion practices, implemented by some but not all of his managers (Austin Depo., pp. 50, 58, 95-97, 117-118 and 130).  Plaintiff's complaint is limited to the claim that Defendant failed to promote him to a CSOA III (Doc. No. 2, ¶¶ 5-7).

Defendant filed its motion for summary judgment arguing: (1) Plaintiff's claims regarding certain employment actions are time-barred; (2) Plaintiff cannot establish a prima facie case of discriminatory failure to promote; and (3) Defendant has legitimate, non-discriminatory reasons for its employment decision not to promote Plaintiff.

### A.    Time-Barred

Defendant argues that Plaintiff's § 1981 claims, and therefore his FCRA claims, are subject to a four-year statute of limitations.[7]  The Court agrees.  <u>See</u> <u>Price v. M & H Valve Co.</u>,

_____

[7]In responding to Defendant's motion for summary judgment, Plaintiff did not address this argument.  In fact, Plaintiff states that "Defendant has been aware of Plaintiff's belief that he

177 Fed. Appx. 1, 10 (11th Cir. 2006).  Therefore, the Court grants Defendant's motion for

summary judgment as to any claims of racial discrimination for failure to promote which

occurred prior to January 2002.

### B.        Plaintiff's Discrimination Claims[8]

In a § 1981 discrimination case, the plaintiff bears the initial burden of establishing a

prima facie case of discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802

(1973); see also Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252 (1981).  A plaintiff

may establish a prima facie case of discrimination by producing direct, circumstantial, or

statistical evidence of discrimination by an employer.  See Standard v. A.B.E.L. Servs., Inc., 161

F.3d 1318, 1330 (11th Cir. 1998).

Because Plaintiff has not introduced any direct[9] or statistical evidence of employment

discrimination based upon race, the Court will limit its discussion to Plaintiff's proffered

circumstantial evidence using the McDonnell Douglas framework.[10]   While Plaintiff argues that

there have not been any "leads in the IT department that are African American" and that he "has

_____

was being discriminated against based upon his race since at least 2002" (Doc. No. 35, p. 12).

[8]Plaintiff alleges discrimination under § 1981 and the Florida Civil Rights Act.  The
Eleventh Circuit has recognized that a Title VII analysis applies to claims of discrimination
under § 1981 and the Florida Civil Rights Act.  See Bass v. Bd. of County Commissioners,
Orange County, Florida, 256 F.3d 1095, 1109 n. 4 (11th Cir. 2001).

[9]Direct evidence is evidence that proves the existence of a fact without inference or
presumption.  See Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227 (11th Cir. 2002).

[10]To the extent that Plaintiff argues that the McDonnell Douglas framework is
inappropriate in the present case since it involves a "progressive promotion rather than a
competitive promotion" (Doc. No. 35, p.9 n. 19), the Court finds this argument unavailing. See
Mack v. St. Mobile Aerospace Eng'g, 195 Fed. Appx. 829, 843 (11th Cir. 2006)(applying
McDonnell Douglas disparate treatment framework in context of a denial of skill-level
promotion).

always been the only African American in the IT Department at the Riverview facility" (Doc. No. 35, p. 4), it is unclear to this Court whether Plaintiff is attempting to introduce statistical proof of a pattern of discrimination.  To the extent that Plaintiff is attempting to utilize these allegations as statistical proof of discrimination, the Court finds Plaintiff's statistical evidence has no probative value since Plaintiff has failed to place these statistics in any relevant context. See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004)("Statistics without any analytical foundation are virtually meaningless")(citations omitted).

In a competitive promotion case, in order to establish a prima facie case of discrimination for failure to promote, a plaintiff must show: (1) he belongs to a racial minority; (2) that he applied for and was qualified for the position; (3) that he was rejected; and (4) thereafter, the position was filled by a person not of the same racial minority or the position was left open.  See Sledge v. Goodyear Dunlop Tires North America, 275 F.3d 1014, 1015, n. 1 (11th Cir. 2001); see also Walker v. Mortham, 158 F.3d 1177, 1186 (11th Cir. 1998)(citing Crawford v. Western Electric Co., 614 F.2d 1300, 1315 (5th Cir. 1980)).  Under this standard, Defendant argues that the lack of a CSOA III level job opening is fatal to Plaintiff's claims of racial discrimination.  Furthermore, Defendant argues that Plaintiff cannot establish a prima facie case of racial discrimination because Plaintiff cannot establish that he was qualified to be promoted to a CSOA III or that a similarly situated person outside his classification was promoted.

Plaintiff argues that a promotion from a CSOA II to a CSOA III is a non-competitive promotion, meaning that he could be promoted to a CSOA III at any time, and as such, the lack of a job opening is not fatal to his claim of discrimination.  To establish a prima case of

15

discrimination on a non-competitive failure to promote claim, a plaintiff must establish: (1) he is

a member of a protected class; (2) he sought a promotion for which he was qualified; (3) he was

denied that promotion despite his qualifications; and (4) similarly situated individuals not in

Plaintiff's protected class received non-competitive promotions.  See Hayes v. Clark County,

2006 WL 2645127, *3 (D. Nev. September 14, 2006)(citing Harris v. Secretary, United States

Dep't of the Army, 119 F.3d 1313, 1320 (8th Cir. 1997); Epstein v. Secretary, United States

Dep't Treasury, 739 F.2d 274, 278 (7th Cir. 1984)).

### Lack of CSOA III Level Job Opening

Plaintiff concedes he did not apply for any specific CSOA III position where a non-

African American received the job instead (Austin Depo., pp. 147-148).  In fact, the evidence in

this case establishes that from 1999 through the present (the time of Plaintiff's employment),

there have been no CSOA III's employed at Defendant's Riverview, Florida facility (Vinces

Aff., ¶4).  However, some courts recognize "accretion" or non-competitive "progression"

promotions.  Generally speaking, an accretion promotion "is different from a typical failure to

promote claim because [the plaintiff does] not seek promotion to a vacant position, but rather

argues that he should have been promoted during [the relevant time period] because of his level

of duties and responsibilities."  Nurriddin v. Goldin, 382 F. Supp. 2d 79, 95 (D.D.C. 2005); see

also Glenn v. Williams, 2006 WL 401816, *20 (D.D.C. February 21, 2006).  Therefore, for

purposes of considering Defendant's motion for summary judgment, this Court does not view the

lack of a CSOA III as fatal to Plaintiff's claims.  However, regardless of whether this Court

applies the prima facie elements for a competitive promotion cited by Defendant or a non-

competitive promotion cited by Plaintiff, Plaintiff must establish that he met Defendant's

reasonable qualifications for the position he sought.  See <u>Cooper v. Southern Co.</u>, 390 F.3d 695,

741-43 (11th Cir. 2004).

<u>**Plaintiff's Qualifications for CSOA III**</u>

Plaintiff argues that Defendant's use of "a completely subjective evaluation and

promotion process" raises a genuine issue of fact as to whether he was qualified for the CSOA

III position.  This Court finds Plaintiff's argument unavailing.  First, in light of Defendant's use

of a written Job Skills Matrix and Job Skills Matrix Evaluation, this Court does not agree that

Defendant's evaluation and promotion process is completely subjective.  Secondly, use of

subjective criteria in the promotion process is not, in itself, inappropriate.  See <u>Wilson</u>, 376 F.3d

at 1088 (citing <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1033-35(11th Cir. 2000)).

In support of his contention that he is qualified for a CSOA III position, Plaintiff relies

largely on his personal belief that he possesses stronger skills than the other employees in his

work unit due in part to his work experience and training prior to being employed with

Defendant (Austin Depo., pp. 138-141).  However, Plaintiff admits that he is not in a position to

evaluate the other employees in his work group (Austin Depo., p. 101).  Plaintiff's personal

opinion, without more, is not enough to establish he was qualified for the promotion.  See

<u>Holifield v. Reno</u>, 115 F.3d 1555, 1564 (11th Cir. 1997); <u>see</u> <u>also</u> <u>Cooper</u>, 390 F.3d at 741-43.

In contrast to Plaintiff's own self-assessment, Defendant has presented substantial

evidence that Plaintiff was not qualified for the CSOA III position.  None of Plaintiff's IT

Managers, or even his current Team Lead, Dave Peck, have recommended that Plaintiff be

promoted from a CSOA II to a CSOA III.  Specifically, while Plaintiff has generally met

Defendant's expectations as to his CSOA II position, managerial consensus is that he is not

17

performing at a CSOA III level.  Nor have Plaintiff's job duties and performance "mapped" to a CSOA III on the Job Skills Matrix.

Plaintiff's evaluations with respect to his performance as a CSOA II do not demonstrate that he was qualified to be a CSOA III in that he is only meeting expectations as to his current position and not exceeding expectations.  See Harper v. ULTA Salon Cosmetics & Fragrance, Inc., 2007 WL 528088, *17 (N.D. Ga. February 13, 2007)(citing Nurriddin, 382 F. Supp. 2d at 101).  Furthermore, Defendant has documented that Plaintiff has had some performance issues over time.  Significantly, during his deposition Plaintiff was unable to provide any specific examples of CSOA III level work that he had performed for Defendant (Austin Depo., pp. 106-106 and 165-171).   In short, as Plaintiff has not established that he was qualified for the promotion he sought, his prima facie case of racial discrimination fails.

### Plaintiff Can Point to No Other "Similarly Situated" Promotions

Even if Plaintiff could establish that he was qualified for the CSOA III position, Plaintiff's prima facie case for racial discrimination also fails because he has not shown that similarly situated co-workers outside his protected class were promoted during the relevant time period.  Plaintiff concedes that no one in his work unit has been promoted to a CSOA III during the relevant time frame (Doc. No. 35, p. 12).  Rather, he argues that he has met his burden of establishing a prima facie case of racial discrimination "by showing that every other CSOA I or II of the Riverview IT Department has been promoted" (Doc. No. 35, p. 11).  This Court disagrees that Plaintiff has met his burden.

"To show that employees are similarly situated, the plaintiff must establish that the employees are 'similarly situated in all relevant respects.'" Dickinson v. Springhill Hosps., Inc.,

18

187 Fed. Appx. 937, 939 (11th Cir. 2006)(citations omitted); see also Hammons v. George C. Wallace State Cmty. Coll., 174 Fed. Appx. 459, 462 (11th Cir. 2006) (valid comparator must be "nearly identical").  Plaintiff has provided no evidence regarding the performance or qualifications of the employees promoted to the CSOA II positions.  Moreover, as the expectations listed in the Job Skills Matrix establishes, the job skills and requirements for a CSOA II level position are not the same as a CSOA III level position (Reed Aff., Exh. 3). Therefore, to the extent that Plaintiff argues that he was treated less favorably that non-African American co-workers with respect to promotions, this claim fails.  Plaintiff has failed to present any evidence that other non-African American employees were similarly situated and treated more favorably with respect to promotions to a CSOA III.

### Pretext

Even assuming that Plaintiff could establish a prima facie case of racial discrimination, he has not shown that Defendant's cited reasons for not promoting him to a CSOA III were pretextual.  Pretext means more than an inconsistency or a mistake, pretext is "a lie, specifically a phony reason for some action."  Silvera v. Orange County School Bd., 244 F.3d 1253, 1261 (11th Cir. 2001).  A plaintiff cannot establish pretext by merely questioning the wisdom of the employer's reasoning, especially where "the reason is one that might motivate a reasonable employer."  Lee v. GTE Florida, Inc., 226 F.3d 1249, 1255 (11th Cir. 2000)(quoting Wolf v. Buss (America) Inc.), 77 F.3d 914, 919 (7th Cir. 1996)).  Finally, courts cannot reexamine an employer's business decisions; the court's inquiry is limited to determining whether the employer gave an honest explanation for its behavior.  See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

19

Here Defendant made a business decision to not promote Plaintiff to a CSOA III position or even to have a CSOA III level position in the Riverview, Florida facility. Defendant produced evidence that Plaintiff did not meet its criteria for a promotion to a CSOA III and that there was no business need for a CSOA III at the Riverview facility. Thus, the burden shifts to Plaintiff to put forth evidence demonstrating that Defendant's proffered legitimate, non-discriminatory reasons for its employment decisions are but pretext to cover up an actual discriminatory motive.

In his attempt to establish pretext, Plaintiff relies merely upon speculation and incidents -- unrelated to his seeking a promotion to a CSOA III -- where he perceives he was treated less favorably than his peers. While Plaintiff speculates that the reason that Defendant does not have a CSOA III position in Riverview, Florida is because Defendant doesn't want an African American CSOA III, he admits he is not in a position to determine whether there is a business need for a CSOA III at the facility (Austin Depo., pp. 150-151).

<u>Incidents of Unfair Treatment</u>

First, Plaintiff argues that he was denied the opportunity to transfer to Sabal Park and a non-African American female was transferred instead. Defendant admits that in May 2002, Plaintiff was originally considered for an opportunity to perform CSOA II support in Sabal Park (Vinces Aff., ¶16). However, due to other personnel considerations, Defendant decided that Javier Vinces,[11] who was to transfer to Sabal Park along with Plaintiff, would remain at the Riverview facility as a Team Lead instead of transferring to Sabal Park. Defendant then determined that Jeanna McMorrow was better suited than Plaintiff for the transfer to Sabal Park because she possessed more well rounded skills than did Plaintiff (Vinces Aff., ¶¶16-17 and

---

[11]Vinces is the current IT Manager. In May 2002, Vinces was not Plaintiff's IT Manager.

Clapper Aff., ¶¶4-5).

Next, Plaintiff further contends that he was "given unique job duties in the configuration room" and subsequently "asked to take a demotion in pay and grade as a result" (Doc. No. 35, p. 15). Defendant has put forth evidence that in December 2004, as a result of changes in federal regulations under the FLSA, it conducted an internal audit of twenty-two CSOA positions where employees performed configuration duties similar to those performed by Plaintiff. As a result, seventeen exempt CSOA positions, including the Plaintiff's, were reclassified to non-exempt PC Technician positions (Reed Aff., ¶21). Of the employees impacted, fifteen were Caucasian and two (including Plaintiff) were African American (Reed Aff., ¶22). In June 2005, Plaintiff was moved back to an open CSOA II position and during his time in the PC Technician position, Plaintiff's salary remained the same as it had been at the CSOA II level (Reed Aff., ¶23).

Lastly, Plaintiff states that he was denied permission to work four ten-hour shifts per week while a non-African American female was given the exact flexible schedule he had requested. There is insufficient evidence in the record for this Court to determine exactly when, and to whom, Plaintiff made the request for a flexible schedule. Plaintiff concedes that there is currently no one in the Riverview, Florida facility working a "four 10-hour day shift" (Austin Depo., p.108). Further, the Court notes that in his deposition, Plaintiff states that per his request, his hours were recently changed such that he will work 6:00 to 2:30 instead of 7:00 to 4:00 (Austin Depo., pp. 29 -31).

In sum, these purported incidences of discriminatory bias cited by Plaintiff as evidence of pretext appear to the Court to be legitimate business decisions made by Defendant and do not raise an issue of fact as to Defendant's proffered non-discriminatory reasons for not promoting

Plaintiff to a CSOA III.

**IV.     Conclusion**

The Court finds that Plaintiff has not established a prima case of discrimination.

Furthermore, even had Plaintiff established a prima facie case of discrimination, there is no

evidence that Defendant's stated reasons for its failure to promote Plaintiff were pretextual.

Therefore, the Court finds that Defendant is entitled to summary judgment on Plaintiff's § 1981

and FCRA claims.

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1)     Defendant's motion for summary judgment (Doc. No. 24) is **GRANTED**.

(2)     The Pretrial Conference in the above-captioned matter scheduled for Thursday,

May 10, 2007 at 8:30 a.m. is hereby cancelled.

(3)     The Clerk is directed to enter judgment in favor of Defendant and **CLOSE** this

case.

**DONE AND ORDERED** at Tampa, Florida, this 26th day of April, 2007.

SUSAN C. BUCKLEW
United States District Judge

Copies to:

Counsel of Record